UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| CHARLES B. ANDERSON JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-16-1060-HE |
| LIEUTENANT FALSTED et al., | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Charles Anderson Jr., a federal prisoner appearing pro se and proceeding *in forma pauperis*, filed this *Bivens* action seeking monetary relief against eleven officials at Federal Correctional Institution, El Reno ("FCI El Reno"). *See* Compl. (Doc. No. 1) at 1-14.[1] Chief United States District Judge Joe Heaton has referred Plaintiff's case to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b). For the reasons that follow, the undersigned recommends that Plaintiff's claims against the ten "John and Jane Doe" Defendants be dismissed on screening. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

STANDARD OF REVIEW

The Court must screen Plaintiff's Complaint in order to identify its cognizable claims and to dismiss the pleading, or any portion thereof, that fails to state a claim upon which relief can be granted. *See id.* To survive dismissal a "complaint must contain

---

[1] Citations to documents filed with the Court use the page and exhibit numbers assigned by CM/ECF.

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). A claim is facially plausible when the well-pled factual allegations, accepted as true and viewed in the plaintiff's favor, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" under the governing law. *Iqbal*, 556 U.S. at 678, 679; *see Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013).

A pro se plaintiff's complaint is "construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," so that any potentially valid claim can be fairly decided on its merits. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, a pro se plaintiff must allege "facts on which a recognized legal claim could be based," *id.*, and district courts should not "construct . . . claims or grounds [for] relief" not fairly presented in the complaint, *Windsor v. Colo. Dep't of Corr.*, 9 F. App'x 967, 970 (10th Cir. 2001). Courts also "are not bound to accept as true a legal conclusion couched as a factual allegation" or to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79 (internal quotation marks omitted).

PLAINTIFF'S ALLEGATIONS AND RELIEF SOUGHT

This action challenges the conditions of Plaintiff's confinement—specifically, a known threat to Plaintiff's personal safety and injuries that Plaintiff suffered when he was physically assaulted by other inmates—while he was incarcerated at FCI El Reno.[2] *See*

---

[2] Plaintiff has since been transferred to United States Penitentiary, Terre Haute, in Terre Haute, Indiana. Compl. at 1.

Compl. at 1, 9-12. In Count I, Plaintiff describes his conversation with Defendant Lieutenant Falsted, as well as Defendant Falsted's response to Plaintiff's request for protective housing, shortly before Plaintiff was attacked on May 19, 2015. *See id.* at 9-11. Plaintiff alleges that Defendant Falsted was a "Correctional Supervisor" employed by the Federal Bureau of Prisons ("BOP") and assigned to FCI El Reno. *Id.* at 7. In Count II, Plaintiff purports to "incorporate[] . . . by reference" the allegations against Defendant Falsted and bring these allegations against "Defendants John and Jane Does 1-10." *See id.* at 2, 12. Plaintiff states that these ten "unknown" individuals were BOP employees "assigned to the FCI El Reno in one or more of the following capacities: Correctional Officers, Correctional Supervisors, Executive and/or responsible Administrative Staff." *Id.* at 8.

## Plaintiff's Allegations

Shortly before dinnertime on May 19, 2015, Plaintiff went to Lieutenant Falsted's office to report that Plaintiff "needed to be placed in Administrative Segregation Housing" because he "had been told he was going to be attacked with weapons by fellow Native American inmates." *Id.* at 9. Lieutenant Falsted asked Plaintiff why he believed he "was the target of an impending attack." *Id.* Plaintiff alleges that he told Lieutenant Falsted about three "specific threats to his safety" from different racial or ethnic groups in FCI El Reno's general population, which is where Plaintiff was housed at the time. *Id.* at 11.

First, Plaintiff said that he had ran out of the money he was using to settle "old drug debts of fellow Native Americans to the Mexican Mafia . . . in an effort to maintain peace between" those two groups. *Id.* at 9. Second, Plaintiff said that he had "testif[ied] as a

3

defense witness" for two Aryan Brotherhood members and that the Mexican Mafia had passed that information along to "various members and 'Shot Callers' of African-American gangs" such as the "Crip[]s, Bloods, and Gangster Di[s]ciples." *Id.* at 9-10. Finally, Plaintiff said that he had been warned "that he had to leave" general population "or get 'stuck up'" because there was a rumor going around that Plaintiff "had assisted the government during the trial and prosecution of members of the Aryan Brotherhood." *Id.* at 9. According to Plaintiff, "mandatory applicable BOP policies" required Defendant Falsted, upon receiving this information, to "immediately place Plaintiff into Administrative Segregation Housing pending the completion of a Threat Assessment Investigation." *Id.* at 10-11.

Lieutenant Falsted told Plaintiff to wait on a bench outside his office. *Id.* at 10. Around the same time, two Native American inmates approached Plaintiff and told him that "he was not going to be attacked by anyone." *Id.* Lieutenant Falsted apparently overheard the other inmates' comment and "ordered [P]laintiff to return to his housing unit." *Id.* Plaintiff did as he was told. *See id.* "Within five minutes of [P]laintiff's return to his housing unit, he was physically assaulted with weapons by Native American inmates." *Id.* at 10. Plaintiff suffered "serious injuries" requiring treatment at a local hospital. *Id.*

Plaintiff does not allege any facts describing what, if anything, the ten "John and Jane Doe" employees knew about the threats to Plaintiff's safety before he was attacked. *See id.* at 12. Instead, Plaintiff purports to "incorporate[] . . . by reference" the portions of his Complaint in which he describes Defendant Falsted's misconduct, and he concludes

that the John and Jane Doe Defendants' "individual and/or collective acts and omissions" violated the Eighth Amendment. *Id.*

Plaintiff seeks monetary damages against each Defendant in his or her individual capacity. *Id.* at 1-2, 7-8, 11-13.

ANALYSIS

"The factors necessary to establish a *Bivens* violation will vary with the constitutional provision at issue." *Iqbal*, 556 U.S. at 676. Plaintiff alleges that Defendant Falsted and the ten John and Jane Doe Defendants violated the Eighth Amendment because they failed to protect him from "specific threats to his safety" by other inmates housed in general population. *See* Compl. at 2, 9-12. "[T]o establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff 'must show that he [was] incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A prisoner-plaintiff demonstrates deliberate indifference by showing that the "official acted or failed to act despite his knowledge of a substantial risk of serious harm" to the prisoner. *Farmer*, 511 U.S. at 842. Additionally, because vicarious liability is not recognized in *Bivens* actions, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff's well-pled factual allegations, accepted as true and viewed in his favor, support a reasonable inference that Plaintiff was "incarcerated under conditions posing a

5

substantial risk of serious harm" to his physical safety before the two inmates attacked him on May 19, 2015. *Cf. Benefield*, 241 F.3d at 1272 (noting "the obvious danger associated with a reputation as a snitch"). But Plaintiff's Complaint does not contain any allegations supporting a reasonable inference that any of the ten John and Jane Doe Defendants were actually aware of—let alone deliberately indifferent to—a substantial risk of serious harm to Plaintiff's personal safety at that time. *See Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *cf. Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) ("Mr. Brown's Complaint cannot be the basis for personal liability because it does not specifically allege how Secretary Williams acted in Mr. Brown's case or even that he knew about it."). Indeed, Count II contains nothing more than a "naked assertion[]," *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted), that these Defendants' "individual and/or collective acts and omissions" violated Plaintiff's Eighth Amendment rights, Compl. at 12.

It is worth noting that Plaintiff does not necessarily need to know the Defendants' "identities and titles," *id.* at 8, in order to state a claim for relief against any particular prison official at this early stage of the proceeding. *See, e.g.*, *Hornbeck v. Doe*, No. CIV-14-276-W, 2015 WL 3440223, at *2 (W.D. Okla. May 27, 2015) (noting that the Court authorized a pro se prisoner in a § 1983 action to attempt service of process on a John Doe defendant). In this case, however, Plaintiff's Count II fails because the Complaint does not "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from

collective allegations" that cannot provide a basis for imposing individual liability. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (internal quotation marks omitted); *accord Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

## RECOMMENDATION

The undersigned recommends that the claims asserted in Count II of Plaintiff's Complaint be dismissed because the Complaint fails to state a claim upon which relief can be granted against any of the ten "John and Jane Doe" Defendants and that these Defendants be dismissed from this lawsuit. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). Count I should proceed against Defendant Falsted in his individual capacity. *See* 42 U.S.C. § 1997e(g)(2).

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by October 2, 2017, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 11th day of September, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE